## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Criminal Case No. 3:04cr00047-1** |
| | ) | |
| **v.** | ) | **2255 MEMORANDUM OPINION** |
| | ) | |
| **LOUIS ANTONIO BRYANT** | ) | **By: Norman K. Moon** |
| | ) | **United States District Judge** |

Louis Antonio Bryant, a federal inmate proceeding *pro se*, filed this motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, challenging his convictions and sentence in the above-referenced criminal proceeding. For the reasons stated herein, I will grant the United States' motion to dismiss.

## I.

Bryant was charged in the Western District of Virginia with several crimes stemming from his leadership of a violent drug organization in Charlottesville, Virginia, which operated from the mid-1990s through February, 2005. On February 16, 2005, in a Superseding Indictment, Bryant was indicted on twelve charges relating to narcotics trafficking, firearms offenses, and associated acts of violence. Count One charged Bryant with conspiring to possess with the intent to distribute and conspiring to distribute 50 grams or more of crack cocaine, 5 kilograms or more of hydrochloride, heroin, PCP, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846, 859, 860, and 861; Count Two charged him with continuing a criminal enterprise, in violation of 21 U.S.C. § 848(a) and (b); Count Three charged him with conspiring to participate in a racketeer influenced corrupt organization, in violation of 18 U.S.C. § 1962(d); Counts Five and Six charged him with attempting to murder Natalie Reyes and James Jones, in aid of racketeering activity, in violation of 18 U.S.C. §§ 2 and 1959(a)(5); Count Eleven charged

him with possessing marijuana with the intent to distribute, in violation of 18 U.S.C. § 841(a)(1); Count Twelve charged him with using, carrying, brandishing, and discharging a firearm during and in relation to a drug trafficking crime as charged in Count One, in violation of 18 U.S.C. § 924(c)(1); and Counts Thirteen, Fourteen, Fifteen, Sixteen, and Seventeen charged him with attempting to murder Richard Koonce, Philip Green, and Robert Pryor, and threatening to murder Pryor and his family, in aid of racketeering activity, in violation of 18 U.S.C. §§ 2 and 1959(a)(5).

Bryant's first trial commenced on November 14, 2005, but due to juror misconduct, I declared a mistrial on November 30, 2005. Bryant's second jury trial began on May 8, 2006, during which the government presented several witnesses, including Bryant's associates in the organization, as well as corroborative evidence from a variety of law-enforcement officers, chemists, and others. Specifically, law enforcement officers provided substantial forensic evidence, including shell casings found at relevant crime scenes, items discovered during the execution of search warrants, and forensic firearms evidence and analysis.

On May 22, 2006, the jury returned guilty verdicts on Counts One, Two, Three, Eleven, Twelve, Fifteen, Sixteen, and Seventeen and acquitted Bryant on Counts Five and Six. Counts Thirteen and Fourteen were dismissed on the government's motion. By special verdict, the jury found that Bryant was a principal supervisor and leader in the enterprise, that the enterprise involved the distribution of 1.5 kilograms or more of substances containing cocaine base, and that a number of violent acts and narcotics offenses were carried out in aid of the enterprise's racketeering activities.

On August 21, 2006, I sentenced Bryant to a total term of life imprisonment, consisting of life imprisonment as to Counts Two and Three, 60 months as to each of Counts Eleven,

Sixteen, and Seventeen, and 120 months as to Count Fifteen, all to be served concurrently, and 120 months as to Count Twelve, to be served consecutively to all other counts.[1]  Bryant filed a motion to modify sentence and I granted his motion, reducing his sentence as to Count Three to 108 months.  On September 1, 2006, I entered final judgment.

Bryant appealed and I appointed Bryant's trial counsel to represent him on appeal.  Bryant raised several issues on appeal, including challenges to the jury venire, selection, and composition; challenges to witness testimony and document admission pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004); and a constitutional challenge alleging a violation of his right to a speedy trial.  *United States v. Bryant*, 417 F. App'x 220 (4th Cir. 2008).  The United States Court of Appeals for the Fourth Circuit remanded Bryant's appeal with instructions to vacate the conviction on Count One, but affirmed all other convictions and the life sentence.  In accordance with the remand, I vacated Bryant's conviction on Count One.  Bryant appealed the Fourth Circuit's decision to the Supreme Court of the United States, which denied his petition for writ of certiorari.

Bryant filed the instant § 2255 motion raising twenty-two claims concerning the court's jurisdiction, trial court error, prosecutorial misconduct, sentencing inequity, and ineffective assistance of counsel.  The United States has filed a motion to dismiss and Bryant has responded thereto, making this matter ripe for disposition.

---

[1] Pursuant to *Rutledge v. United States*, 517 U.S. 292 (1996), I declined to sentence Bryant on Count One (narcotics conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846), as it is a lesser included offense of Count Two.

## II. Procedurally Defaulted Claims

Bryant alleges that the court lacked subject matter jurisdiction in his criminal proceeding because the prosecutor failed to follow Department of Justice ("DOJ") policy (Claim One)[2] and because the court records do not show compliance with grand jury procedures (Claim Three), that the court denied his right to a public trial when it excluded Bryant's family from the courtroom (Claim Five), that the prosecutor presented perjured testimony (Claim Thirteen), that Bryant's sentence should be reduced to reflect the disparity between cocaine powder and cocaine base (Claim Eighteen), and that the evidence is insufficient to support his conviction for continuing a criminal enterprise (Claim Nineteen). However, Bryant could, but failed to, raise any of these claims on direct appeal, and he has failed to demonstrate grounds to excuse his default. Accordingly, I find that these claims are procedurally barred and, therefore, will dismiss them.

"[H]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998). Claims that could have been but were not raised on direct appeal are procedurally defaulted unless the petitioner demonstrates both cause for the default and actual prejudice from the failure to review the claim, *Bousely*, 523 U.S. at 622; *United States v. Frady*, 456 U.S. 152, 170 (1972); *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977); *United States v. Mikalajunas*, 186 F.3d 490, 492-95 (4th Cir. 1999); *United States v. Maybeck*, 23 F.3d 888, 891 (4th Cir. 1994), or demonstrates that he is actually innocent, *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Mikalajunas*, 186 F.3d at 493.

To establish cause, Bryant must point to some objective factor beyond his control that impeded or prevented him from presenting his claim. *Coleman v. Thompson*, 501 U.S. 722, 753

---

[2] For ease of review, I will adopt the same numbering system that Bryant employed his § 2255 motion and that the United States' adopted in its motion to dismiss.

(1991). Objective factors that may constitute "cause" include: (1) interference by officials that makes compliance impracticable; (2) a showing that the factual or legal basis for a claim was not reasonably available; (3) novelty of the claim; and (4) constitutionally ineffective assistance of counsel. *Wright v. Angelone*, 151 F.3d 151, 160 n.5 (4th Cir. 1998) (quoting *McCleskey v. Zant*, 49 U.S. 467, 493-94 (1991)). To show prejudice, Bryant must demonstrate "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *McCarver v. Lee*, 221 F.3d 583, 892 (4th Cir. 2000) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1972)). Actual innocence means factual innocence, not merely the legal insufficiency of his conviction or sentence. *Bousley*, 523 U.S. at 623-24. "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536-37 (2006) (internal quotation marks omitted). Bryant has procedurally defaulted his claims concerning lack of jurisdiction (Claims One and Three),[3] court error (Claim Five), prosecutorial misconduct (Claim Thirteen), sentencing (Claim Eighteen), and sufficiency of the evidence (Claim Nineteen) because he failed to raise them on direct appeal. The court may consider these claims on habeas review only if Bryant demonstrates cause and prejudice or actual innocence.

Bryant does not allege any cause or prejudice to excuse his default. Nor does he demonstrate that he is actually innocent of his convictions.[4] Accordingly, I find that Bryant

---

[3] Moreover, as discussed *infra* in Claims Two and Four, Bryant's allegations concerning the court's jurisdiction also have no merit.

[4] To the extent Bryant's challenge to the sufficiency of the evidence supporting his continuing criminal enterprise conviction alleges that he is actually innocent of the offense, it fails. Actual innocence means factual innocence, not merely legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and there is nothing that remotely suggests that Bryant is actually innocent of the offense.

procedurally defaulted Claims One, Three, Five, Thirteen, Eighteen, and Nineteen and that he has alleged nothing to excuse his default. Therefore, I will dismiss these claims.

### III. Remaining Ineffective Assistance of Counsel Claims

Bryant also raises sixteen claims of ineffective assistance of counsel. However, I find that none of these claims meet both the performance and prejudice prongs of *Strickland v. Washington*, 466 U.S. 668, 669 (1984), and, therefore, I will dismiss them.

To establish a claim of ineffective assistance of counsel, petitioner must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's allegedly deficient performance. *Strickland*, 466 U.S. at 669; *see also Williams v. Taylor*, 529 U.S. 362 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983); *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977). In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance; that is, petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

The petitioner "bears the burden of proving *Strickland* prejudice." *Fields*, 956 F.2d at 1297 (citing *Hutchins*, 724 F.2d at 1430-31). If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." *Fields*, 956 F.2d at 1290 (citing *Strickland*, 466 U.S. at 697). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance; that is, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields*, 956 F.2d at 1297-99; *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985). In this case, Bryant has not demonstrated ineffective assistance of counsel.

## A. Claims Two and Four

Bryant argues that counsel was ineffective in failing to move for dismissal of his criminal proceeding on the basis that the court lacked subject-matter jurisdiction because the United States failed to follow DOJ policy in obtaining approval to prosecute Bryant[5] (Claim Two) and because the court's record fails to show that twelve or more qualified grand jurors "examined" and "approved" Bryant's Superseding Indictment, that the jurors concurred in finding and returning it as a "True Bill," and that the jury foreperson delivered the True Bill to the Clerk of Court (Claim Four). I find that Bryant has failed to demonstrate that counsel's performance was deficient. Accordingly, I will dismiss these claims.

Subject-matter jurisdiction is the authority of a court to hear cases of a particular type or cases relating to a specific subject matter. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Subject-matter jurisdiction over federal criminal prosecutions is conferred on district courts by 18 U.S.C. § 3231. Pursuant to § 3231, district courts "have original jurisdiction . . . of all offenses against the laws of the United States." Bryant was charged with violating laws of the United States, and therefore, this court had subject-matter jurisdiction over his federal prosecution. *See United States v. Belt*, 206 F. App'x 289 (4th Cir. 2006). Bryant's claims

---

[5] Specifically, Bryant alleges that the United States violated DOJ policy when it failed to obtain and file the necessary "Memorandum/Case Initiation Report" and "Supporting Affidavit" which would demonstrate "a compelling federal interest by requesting prior approval to prosecute [Bryant] in the United States District Court for the Western District of Virginia, on racketeering and drug violation charges."

concerning the prosecutor's alleged failure to obtain pre-authorization from the DOJ to prosecute Bryant and alleged deficiencies in the grand jury proceedings do not affect the court's subject-matter jurisdiction. Inasmuch as counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis," *see Clanton v. Bair*, 826 F.2d 1354, 1359 (4th Cir. 1987), I find that Bryant has not demonstrated that counsel was ineffective in failing to move for dismissal of Bryant's criminal proceeding on the basis of lack of subject matter-jurisdiction.

Moreover, Bryant has not demonstrated that counsel was ineffective in failing to take any other action concerning his claims that the prosecutor failed to obtain pre-authorization to prosecute Bryant and that the grand jury proceedings were irregular. Pursuant to the U.S. Department of Justice, United States Attorneys' Manual, § 9-110.101, "[n]o RICO criminal indictment or information or civil complaint shall be filed . . . without the prior approval of the Criminal Division." However the guidelines in this manual, like other guidelines which are "not mandated by statute or the constitution, do not confer substantive rights on any party." *United States v. Lopez-Matias*, 522 F.3d 150, 155-57 (1st Cir. 2008). As stated in the manual, "[t]hese guidelines provide only internal Department of Justice guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." U.S. Dep't of Justice, United States Attorneys' Manual, § 9-110.200. Bryant presents no evidence in support of his allegation that would suggest that the government did not file the appropriate paperwork and obtain all necessary approvals in accordance with the guidelines prior to the commencement of his prosecution. And, even if the government failed to follow the DOJ policy, Bryant has not demonstrated how this alleged failure violated his rights. Accordingly, I find that Bryant has not established the counsel

provided ineffective assistance in failing to take action based on the government's alleged failure to follow its internal policies for prosecuting the case.

"The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (citing *United States v. Johnson*, 319 U.S. 503, 512-13 (1943)); *see also United States v. Buffington*, 815 F.2d 1292, 1304 (9th Cir. 1987) ("[T]he party challenging this presumption faces a heavy burden.") Absent special circumstances, those involved in the grand jury process "must not disclose a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2). The foreperson must "record the number of jurors concurring in [the] indictment," but this record "may not be made public unless the court so orders." Fed. R. Crim. P. 6(c). Given the secrecy interest in grand jury proceedings, the task of presenting particularized proof of an irregularity belongs to Bryant.

The record shows that Bryant's Superseding Indictment was signed by the grand jury foreperson and that it was endorsed as a "True Bill," indicating that twelve grand jurors voted to indict him.[6] Bryant has presented no evidence impeaching the integrity of the grand jury foreperson's signature. *See United States v. Demarey*, 81 F.3d 161 (6th Cir. 1996). Further, the record reflects that a Deputy Clerk, on behalf of the Clerk of Court, accepted the Superseding Indictment and filed it with the court. Bryant has not made allegations or put forth any evidence

---

[6] *See United States v. Demarey*, 81 F.3d 161 (6th Cir. 1996) ("The superseding indictment is signed by the grand jury foreperson and indicates that it is a true bill; that is, a quorum of grand jurors agreed to indict."); *United States v. Michael*, 180 F.2d 55, 56 (3d Cir. 1950) ("The finding of an indictment is the function of the grand jury. When an indictment has been submitted to the grand jury by the government attorney it becomes the duty of that body to find it to be a true bill of indictment and so return it to the district court, if at least twelve of the grand jurors concur in regarding the evidence presented by the government as making out a *prima facie* case of the offense charged. If the requisite number of grand jurors decline to find the indictment to be a true bill it is to be returned as ignored. When the grand jury has found an indictment to be a true bill and has completed its action thereon by returning the indictment, duly endorsed as a true bill by its foreman, to the district court in open session, its function has been fulfilled.").

to overcome the presumption of regularity. Accordingly, I find that Bryant has not established that counsel provided ineffective assistance in failing to object to the grand jury proceedings leading to his indictment. For these reasons, I will dismiss Bryant's Claims Two and Four.

### B. Claims Six and Seven

Bryant alleges that counsel was ineffective in failing to object to (Claim Six) and appeal (Claim Seven) the court's exclusion of Bryant's family members from the courtroom during jury deliberations and the court's failure to state its reasons for doing so in open court. I find that Bryant has failed to demonstrate either that counsel's performance was deficient or that he was prejudiced by counsel's allegedly deficient performance. Accordingly, I will dismiss these claims.

In the middle of jury deliberation in this case, the jury requested to review "a written transcript of [a] voice-mail message" and if that was not available, they asked to "listen to them with written content" and "with only legal counsel, prosecution, and defendant in the court room." The evidence at issue consisted of a voicemail recording with a real-time transcript of the recording. The only way this evidence could be reviewed was on the technology available in the courtroom. Despite the jury's presence in the courtroom, the trial had concluded and no new evidence was being presentenced when Bryant's family members, along with the rest of the general public, were excluded from the courtroom.

While Bryant has a right to a public trial by a jury of his peers, he does not have a right to a public jury deliberation. In fact, a courtroom may be closed even during jury instruction in order to prevent distraction of the jurors. *United States v. Romano*, 684 F.2d 1057, 1065-66 (2d Cir. 1982). Counsel is not ineffective for failing to raise an objection for which there is "no obvious basis," *see Clanton*, 826 F.2d at 1359, and the omission of a specific issue from a filed

appeal, even if the issue is nonfrivolous, does not constitute ineffective assistance, *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983) (holding that a defense attorney does not have a constitutional duty to raise every nonfrivolous issue requested by his client). I find that Bryant has not demonstrated how counsel's failure to object to or appeal the court's exclusion of Bryant's family members from the courtroom during this time constituted deficient performance by counsel. Further, Bryant has not established a reasonable probability that had counsel objected to or appealed the exclusion of Bryant's family from the courtroom while the jury heard the voicemail recordings, the outcome of his trial or appeal would have been different. Therefore, I find that Bryant has not demonstrated ineffective assistance of counsel, and I will dismiss Bryant's Claims Six and Seven.

### C. Claim Eight

Bryant alleges that counsel was ineffective in denying Bryant's request to testify in his own defense. I find that Bryant has failed to demonstrate either that counsel's performance was deficient or that he was prejudiced by counsel's allegedly deficient performance. Accordingly, I will dismiss this claim.

Bryant has not shown that his counsel's actions were outside the permissibly wide range of reasonable actions in the instant case. *See Strickland*, 466 U.S. at 689. In asserting that counsel "denied" him the right to testify, Bryant does not assert whether counsel merely advised him against testifying or actually coerced him into not testifying.

Clearly, tactical advice not to testify "is a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." *Hutchins*, 724 F.2d at 1436 (citing *Marzullo*, 561 F.2d at 544-45. "Absent evidence of coercion, legal advice concerning the defendant's right to testify does not constitute [ineffective assistance of counsel]." *Carter v. Lee*,

283 F.3d 240, 249, 252 n.11 (4th Cir. 2002) (quoting *Reyes-Vejerano v. United States*, 117 F. Supp. 2d 103, 108-09 (D.P.R. 2000)) (finding that under *Strickland*, a convict's "tardy assertion of coercion" to testify must fail where counsel strongly advised him of necessity of testifying); *see also Jones v. Murray*, 947 F.2d 1106, 1116 n.6 (4th Cir. 1991) (restating the principle that counsel's advice to testify is paradigmatic of a strategic decision); *Rogers-Bey v. Lane*, 896 F.2d 279, 283 (7th Cir. 1990) (finding that counsel's advice not to testify, based in part on erroneous belief that defendant could be impeached with prior convictions, was not deficient performance).

While Bryant has a right to testify on his own behalf, counsel's advice to that testifying on his own behalf would not be a wise decision, does not constitute deficient performance. Bryant's belated regret for failing to testify in his own defense is simply impermissible "Monday morning quarter-backing" that cannot be used to impugn his attorney's assistance at trial. *See Stamper v. Muncie*, 944 F.2d 170 (4th Cir. 1991).

Further, Bryant has not demonstrated that his failure to testify in his own defense prejudiced him in any way. Even if I assumed that a factual dispute existed as to whether counsel may have inappropriately led Bryant into not testifying, Bryant has not met his burden of detailing facts sufficient for the court to conclude that there is a reasonable probability that Bryant would not have been convicted if he had testified.

In his memorandum, Bryant states only that:

> [He] would have been able to rebut[] some aspect[]s of the government's witnesses['] testimony, such as [government witness] Robert Pryor . . . , that "No time" in the voice mails did petitioner threaten Robert Pryor's family . . . explained to the jury why he was so upset, being that Pryor . . . had previously shot at him and taunted him on petitioner's own phone; and that when petitioner called Pryor back, Pryor got the answering machine [] and that [P]ryor left messages on his phone as well and how, after petitioner had time to rise above his emotions in calming down, he wished he hadn't said some of the things[.]

> [P]etitioner would have explain[ed] the state of mind he was in at the time that a person who is upset or emotional[] would say thing[]s, but[] have no intention [of] bringing negative thought[]s into manifestation.
>
> Furthermore, the petitioner would have disputed drug amount's that [were] mentioned at his trial by his co-conspirators, that was ultim[at]ely contribut[]ed to the petitioner. That the money mentioned by some of [the] witnesses was exag[g]erated as well as the amount of drug[]s allegedly sold.
>
> In addition, petitioner would have testified that the Woodfolk brother[]s did not work for him . . . . Petitioner would have testified concerning his whereabout[]s at the time of specific incident[]s as alleged by the government, such [as] the allegation from Ernest Anderson, and how petitioner never had any kind of business arrangement[]s with Anderson; and that petitioner never organized or managed nobody; Petitioner had legitimate business and what money he made from "CD'S" and why he . . . didn't file taxes, because he didn't know how to; Petitioner would have testified by explaining his gambling habit[]s and the lumpsum of money he won, and how he alway[]s saved his money.

The potential effectiveness of such conclusory testimony must be evaluated in light of the history of this case. After a lengthy trial, I found that there was sufficient evidence against Bryant for the jury to find him guilty, and the Fourth Circuit upheld Bryant's life sentence and all but one of his convictions. *United States v. Bryant*, No. 3:04-CR-00047-01 (W.D. Va. June 15, 2006); *United States v. Bryant*, No. 06-4977 (4th Cir. Nov. 25, 2008), cert. denied, 129 S. Ct. 2755 (2009). Bryant presents nothing more than a conclusory argument suggesting that his piecemeal "I am innocent" testimony would have overcome the overwhelming evidence against him. Bryant also does not assert that the evidence to which he now alleges he would have testified did not come in through other witnesses or that his testimony would have negated the elements necessary to establish his guilt.

Moreover, there are great strategic disadvantages to a defendant testifying. A court must evaluate the negative aspects of any omitted, purportedly mitigating evidence when evaluating prejudice to the defendant under *Strickland*. *See Whitley v. Bair*, 802 F.2d 1487, 1494-97 (4th Cir. 1986) (finding that the negative effects, including admission of defendant's extensive criminal history, of foregone testimony would have far outweighed any mitigating effects of the testimony). Although Bryant believes he would have rebutted many of the allegations against him, there is no evidence that the jury would have found him persuasive or that Bryant would have withstood the character evidence which would have been allowed into evidence against him if he had insisted on testifying (i.e., Bryant's criminal record).

Other than a blanket declaration that he would have persuaded the jury of his innocence in a few areas of the case against him, Bryant makes no attempt to satisfy the prejudice prong of *Strickland*. Bryant's assertion that his failure to testify in his own defense prejudiced the outcome of his case is simply insufficient to carry his burden. *See Jones*, 947 F.2d at 1115-16 (emphasizing that a defendant must do more than show that an alleged error on the part of counsel "conceivably could have influenced the outcome" and holding that a petitioner's assurances that he would have testified at sentencing to "numerous compelling aspects" of his character and record were insufficient to establish a reasonable probability that the jury would not have imposed the death penalty (quoting *Strickland*, 466 U.S. at 693)). Accordingly, I find that Bryant has not demonstrated that counsel's performance was deficient or that, but for counsel's alleged error, the outcome of his trial would have been different. For these reasons, I will dismiss Bryant's Claim Eight.

## D. Claim Nine

Bryant alleges that counsel provided ineffective assistance because there was a conflict of interest where counsel, who was retained, purportedly refused Bryant's request to testify in his own defense because Bryant could not afford to pay for someone to help him prepare for such testimony. I find that Bryant has not demonstrated that an actual conflict of interest existed or that the alleged conflict adversely affected counsel's performance. Therefore, I will dismiss this claim.

Ineffective assistance of counsel based on a conflict of interest requires the petitioner to show both that counsel was under an actual conflict of interest and that this conflict adversely affected counsel's performance. *United States v. Nicholson*, 475 F.3d 241, 249 (4th Cir. 2007) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980)); *see also Fullwood v. Lee*, 290 F.3d 663, 689 (4th Cir. 2002). If the petitioner establishes both actual conflict of interest and an adverse effect on counsel's performance from this conflict, prejudice to the petitioner is presumed. *Nicholson*, 475 F.3d at 249 (citing *Sullivan*, 446 U.S. at 349-50). An actual conflict arises when counsel "actively represents conflicting interests." *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991).

Although Bryant fails to explicitly assert the basis for his counsel's purported actual conflict of interest, to the extent he is implying that a request from his counsel for payment to hire an expert to prepare Bryant to testify in his own defense constituted a conflict of interest, his claim fails. Requiring payment for services when counsel has been retained by a party, for a fee, simply does not constitute a conflict of interest.

Bryant asserts that counsel's purported conflict of interest adversely affected counsel's performance because he failed to object to Bryant's family's exclusion from the courtroom,

failed to request additional funds "under the CJA statu[te]s" to hire someone to help Bryant prepare to testify, and refused to allow Bryant to testify in his own defense. Counsel's failure to object to Bryant's family's exclusion from the courtroom during jury deliberation was addressed *supra*, Claim Six, and I determined that Bryant did not establish that counsel's performance was deficient or that Bryant was prejudiced by counsel's performance. Counsel's purported refusal to allow Bryant to testify was also previously addressed *supra*, Claim Eight, and I again determined that Bryant did not establish that counsel's performance was deficient or that Bryant was prejudiced by counsel's performance.

The only unaddressed adverse affect that Bryant asserts resulted from his counsel's purported conflict of interest is his failure to request additional funds "under the CJA statu[te]s." To establish an adverse effect, Bryant must show three elements by a preponderance of evidence -- first, there was a plausible alternative defense strategy that counsel could have pursued; second, the foregone strategy was objectively reasonable based on the facts known to counsel when the tactical decision was made; and third, a link between counsel's failure to pursue the alternative strategy and the actual conflict. *Nicholson*, 475 F.3d at 251-52. Bryant completely fails to provide a link, much less by a preponderance of evidence, between counsel's failure to request additional funds under the CJA and the unspecified conflict of interest at issue.

Bryant also fails to show that counsel's failure to request additional funds under the CJA was not objectively reasonable. While 18 U.S.C. § 3006A(e) allows indigent defendants to apply to the court for funds for services other than counsel, Bryant has not argued or demonstrated that he would have qualified for such public assistance or that a testimony coach would constitute a *necessary* expense in the view of the court. *See United States v. Rivera*, 292 F. Supp. 2d 823 (E.D. Va. 2003) (finding indigent defendants were not entitled under the Criminal Justice Act to

a jury consultant at public expense in murder prosecution because the consultant was not necessary for adequate representation and was not one of the "basic tools or 'raw materials integral to the building of an effective defense'" (quoting *Ake v. Oklahoma*, 470 U.S. 68, 76-77 (1985)). Because Bryant does not assert or demonstrate that he would have qualified for these funds, Bryant has not shown that counsel's failure to apply for these funds was unreasonable at the time counsel made the decision. That is, even if Bryant's counsel had applied for funds under the CJA statute, Bryant has not shown that the funds would have been granted. Counsel's failure to apply for these funds was just as likely attributable to a belief in Bryant's failure to qualify than to an unspecified conflict of interest. Bryant has failed to show either an actual conflict of interest or any adverse effect from the purported conflict, and as such, his ineffective assistance claim fails. Therefore, I will dismiss Bryant's Claim Nine.

### E. Claim Ten

Bryant alleges that counsel provided ineffective assistance in failing to object to, and raise on direct appeal, an alleged error under *Richardson v. United States*, 526 U.S. 813 (1999), regarding the jury instructions and the jury's verdict on the continuing criminal enterprise ("CCE") conviction in Count Two. I find that Bryant has failed to demonstrate that counsel's performance was deficient or that he suffered any prejudice is a result of counsel's alleged error. Therefore, I will dismiss this claim.

In *Richardson*, the Supreme Court held that a violation of 21 U.S.C. § 848(a), the CCE statute, required a jury to find specific criminal violations committed by the defendant as part of a "continuing series of violations." 526 U.S. at 815. In this case, I gave an appropriate *Richardson* instruction, provided a verdict form which instructed the jury that they should unanimously agree on the specific violations that constituted the continuing series, and the jury

unanimously agreed that Bryant committed ten specific violations which constituted a continuing criminal enterprise.

During jury instructions, I informed the jury that:

> [T]o find the defendant committed a continuing series of violations, you must find beyond a reasonable doubt that he committed the offense charged in Count One, the conspiracy, plus two or more additional violations of the federal drug laws. You, the jury, must unanimously agree which three specific violations constitute the continuing series of violations. It is not enough that all of you find the defendant committed three narcotics law violations; rather, you must unanimously agree as to the particular narcotics offenses committed by the defendant.

Bryant points to no error in the instruction and verdict form and I find none. In addition, the verdict form required that the jury "find beyond a reasonable doubt whether the Defendant committed the conspiracy charged in Count One and at least two additional violations of the federal drug laws as part of the continuing criminal enterprise" and "should make unanimous findings beyond a reasonable doubt with respect to each of the [CCE predicate] violations listed below" if they found Bryant guilty of Count One. The jury checked "proven" for ten of the twelve possible CCE predicate offenses, indicating that it unanimously agreed that ten specific violations made up Bryant's CCE. Inasmuch as there was no *Richardson* violation, the court finds that counsel was not ineffective for failing to object on that basis. *See Clanton*, 826 F.2d at 1359 (finding that counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis").

Furthermore, although a complete failure to file an appeal that is a matter of right constitutes a colorable claim of ineffectiveness of counsel, *Becton v. Barnett*, 920 F.2d 1190, 1195 (4th Cir. 1990), the omission of a specific issue from a filed appeal, even if the issue is nonfrivolous, does not constitute ineffective assistance, *Jones*, 463 U.S. at 751-54 (holding that a

defense attorney does not have a constitutional duty to raise every nonfrivolous issue requested by his client). Appellate counsel has rendered effective assistance as long as he has exercised "reasonable professional judgment" in deciding not to appeal an issue. *Griffin v. Aiken*, 775 F.2d 1226, 1235 (4th Cir. 1985); *see also Smith v. South Carolina*, 882 F.2d 895, 897-99 (4th Cir. 1989). According to the Supreme Court, "[w]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). Thus, an appellate advocate must often strategically disregard some nonfrivolous issues because "[a] brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Jones*, 463 U.S. at 753. Because there was no *Richardson* violation, I find that appellate counsel exercised reasonable judgment in deciding not to appeal on the basis of *Richardson* and, thus, did not provide ineffective assistance.

Even if I were to find that counsel's performance was deficient when he failed to object to or appeal the alleged *Richardson* error, Bryant still has not demonstrated a reasonable probability exists that a differently instructed jury would have returned a different verdict and, thus, he has not demonstrated prejudice under *Strickland*.

The Fourth Circuit has held that *Richardson* errors are procedural defects, not structural, and, therefore, are subject to harmless-error analysis and require the defendant to demonstrate prejudice. *United States v. Brown*, 202 F.3d 691, 698 (4th Cir. 2000); *United States v. Stitt*, 250 F.3d 878, 883 (4th Cir. 2001). Bryant was not prejudiced by the alleged *Richardson* error because he was convicted on two counts that qualified as CCE predicate offenses: Count One, the drug conspiracy, and Count Eleven, the marijuana possession with intent to distribute charge, which mirrors CCE Predicate 11. The fact that the prosecution proved nine additional CCE

predicates (ten of a possible twelve, including CCE Predicate 11) makes it highly likely that any error in the jury instruction or verdict constituted nothing more than harmless error. Thus, Bryant has not shown that a failure to appeal likely prejudiced the outcome of his case in any way. For these reasons, I will dismiss Bryant's Claim Ten.

## F. Claim Eleven

Bryant argues that counsel was ineffective in failing to "familiarize himself" with the requirements of a CCE so that he could properly prepare a defense. In support of his claim, Bryant argues that counsel "was unable to adequately offer any defense[] that [Bryant] was/is not an organizer, supervisor, or manager" of a CCE. I find that Bryant has not demonstrated that counsel's performance was deficient or that, but for counsel's alleged deficient performance, the outcome of his trial would have been different. Accordingly, I will dismiss this claim.

Bryant has not shown that his trial counsel completely "fail[ed] to subject the prosecution's case to meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 659 (1984). On the contrary, as a result of counsel's vigorous advocacy, Bryant was acquitted on some of the counts with which he was charged. *See United States v. Daniel*, 3 F.3d 775, 779 (4th Cir. 1993) (rejecting ineffectiveness claim where counsel obtained acquittals on some counts and deadlock on others). The fact that Bryant's counsel thoroughly understood the requirements of a CCE under 21 U.S.C. § 848 is best evinced by the fact that he challenged the proposed jury instructions on Count Two and attempted to re-word the instructions to be more favorable to Bryant when a jury question showed confusion on the count's requirements. The lack of an effective defense to Count Two simply shows that the evidence against Bryant was overwhelming, not that Bryant's counsel was in any way ineffective.

Given the evidence against Bryant, defense counsel's efforts were not deficient and also could not have prejudiced Bryant. Other than a blanket declaration that "[t]here is a reasonable probability, had counsel, familiarize[d] himself with the examination of the facts, pleadings, laws, and the § 848 statute, the out[]come of his trial would have been different," Bryant's memorandum makes no attempt to satisfy the prejudice prong of *Strickland*. As such, I find that this claim fails and, therefore, I will dismiss Bryant's Claim Eleven.

### G. Claim Twelve

Bryant asserts that his attorney provided ineffective assistance when he failed to object to the admissibility of evidence, which came in through a government witness, of an "uncharged murder" that was unrelated to Bryant's case. I find that Bryant has not demonstrated either prong of *Strickland* and, therefore, I will dismiss this claim.

Courts refrain from second guessing the tactics and decisions made by trial lawyers. *Stamper*, 944 F.2d at 170; *Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977). The Supreme Court explicitly rejected a "rule that the client, not the professional advocate, [] be allowed to decide what issues are to be pressed," because it would "seriously undermine[] the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Jones*, 463 U.S. at 751. In fact, courts have recognized the soundness of a defense strategy to concede guilt as to a lesser offense or to one of several chargers, prior to a jury verdict, in order to gain confidence or credibility with the jury and, thus, increase the chances for success on other counts. *See Baker v. Corcoran*, 220 F.3d 276, 295-96 (4th Cir. 2000); *Young v. Catoe*, 205 F.3d 750, 759-61 (4th Cir. 2000); *Bell v. Evatt*, 72 F.3d 421, 430 (4th Cir. 1995).

Counsel's objections or failure to object to the government witness's statements clearly were within his strategic discretion. If counsel preferred to gain credibility with the jury by

refraining from objecting to a government witnesses' insinuations of murder-for-hire, of which Bryant was not even charged, this was within the purview of his reasonable defense strategy.

Moreover, there is evidence that counsel objected to this testimony before trial and continuously objected during trial to at least some of the government witnesses' testimony of which Bryant complains. Counsel objected to the leading questions and vague answers that drew out the testimony that Bryant had paid the witness to commit murder. Counsel even moved for a mistrial and for sanctions for prosecutorial misconduct during this line of questioning. Lastly, counsel cross-examined the government's witness on the question of the murder and vigorously attempted to discredit the witness and his testimony in the eyes of the jury.

To the extent Bryant is claiming that counsel provided ineffective assistance for failing to object on the grounds of *United States v. Wilson*, 135 F.3d 291, 297-99 (4th Cir. 1998),[7] the strategic nature of such an objection is underscored by the fact that such objection would have been overruled. Because such an objection would have been denied, counsel's failure to object also would not have changed the outcome of Bryant's case. Bryant provides no reason why, much less a reasonable probability that, if his counsel had objected to this line of questioning on the basis of *Wilson* the result of his case would have been any different.

*Wilson* is distinguishable from this case in that it confronted prosecutorial misconduct in closing arguments. *Wilson*, 135 F.3d at 297-99. There, the uncharged murder was mentioned after the presentation of evidence, making it a surprise that the defendant would not have a chance to rebut with further evidence, and was not based on any evidence from the trial – in fact

---

[7] In *Wilson*, the court recognized that a prosecutor's improper closing argument may "so infect [] the trial with unfairness as to make the resulting conviction a denial of due process." 135 F.3d at 297. In determining whether the defendant's due process rights were violated by the prosecutor's closing argument, the court applied the two-pronged test of *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), and considered (1) whether the remarks were, in fact, improper, and, (2) if so, whether the improper remarks so prejudiced the defendant's substantial rights that the defendant was denied a fair trial. *Id.* The court held that the prosecution's remarks in Wilson's case were improper and that they prejudiced him to the extent that he was denied a fair trial.

it was based on excluded evidence. *Id.* In the instant case, the uncharged murder was mentioned in the middle of witness testimony, which is far below the prejudice incurred by explicitly accusing the defendant of murder during closing arguments. The fact that it did not occur during closing arguments also provided Bryant an opportunity to present evidence to rebut the allusion; it was not a surprise at the conclusion of the trial. The fact that the government also referenced this trial testimony during closing arguments does not bring it under *Wilson*; referencing evidence from trial is entirely proper during closing arguments. *See, e.g., United States v. Thompson*, 195 F. App'x 191, 195 (4th Cir. 2006) (finding prosecutor's use of properly admitted statements was not improper).

Accordingly, I find that Bryant has not met the *Strickland* burden of showing that his counsel's failure to object to the trial testimony at issue prejudiced him in any way because he has not shown that his counsel likely would have been successful if he had objected. For this reason, I will dismiss Bryant's Claim Twelve.

### H. Claim Fourteen

Bryant alleges that counsel was ineffective in failing to "object to" two government witnesses' alleged inconsistent or perjured trial testimony. Specifically, Bryant alleges that counsel should have impeached the testimony of witnesses Woodfolk and Henry with their proffer or investigation reports when they testified that they had dealings with Bryant in 1995 and gave this as the beginning date of the criminal enterprise while Bryant was actually incarcerated in 1995. I find that Bryant has not demonstrated that counsel's performance was deficient or that counsel's alleged deficient performance prejudiced Bryant's case. Accordingly, I will dismiss this claim.

Bryant's allegations do not rise to the level of ineffective assistance because objecting to or impeaching witness testimony is clearly trial strategy. The court generally is reluctant to second-guess a trial lawyer's tactical decisions. *Goodson*, 564 F.2d at 1072. "For judges to second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every colorable claim suggested by a client would disserve the very goal of vigorous and effective advocacy. . . ." *Jones*, 463 U.S. at 754.

Even assuming that a witness provided some testimony to which counsel could have objected, Bryant fails to allege or show that failing to make such an objection or impeachment was far below the standard of competency demanded of attorneys. The record shows that witness Woodfolk was not asked to sign or review for accuracy the report of investigation detailing his interview; he did not even know that the interview was recorded in writing. As such, it would have been much less persuasive as an impeachment document. Witness Henry's proffer was similarly not signed or reviewed for accuracy. Given their lack of value as impeachment documents failing to impeach either witness with these proffers was within the range of reasonable attorney conduct.

Further, a continuing criminal enterprise need not contain a precise date. *See infra*, Claim Fifteen (a conspiracy also need not contain a precise date). The jury was properly instructed:

> The indictment charges that certain offenses were committed on or about a certain date. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

Therefore, any impeachment of the witnesses as to the beginning date of the CCE would have had a nominal affect on the jury's verdict.

There is evidence that Bryant was sentenced on March 28, 1995, to six months in jail. However, this certainly does not preclude the possibility of Henry dealing with Bryant in 1995. Failing to object to or impeach such minor inconsistencies in witness testimony, like the difference between "summer 1995" and late September 1995, was a sound trial strategy judgment that counsel could have properly made.

Further, Bryant has not established that but for counsel's failure to impeach this testimony the result of his trial would likely have been different. Bryant merely alleges that the trial testimony showed the CCE began in 1995, which he claims would have been impossible. He does not argue that his counsel's extensive cross-examinations of both Woodfolk and Henry were less effective because they did not point out minor inconsistencies between these witnesses' in-court statements and previous unsigned, unreviewed proffers. Presumably Bryant is arguing that such an impossible beginning date for the CCE would have led the jury to a different conclusion about the entire existence of the Bryant's CCE. Other than this highly tenuous allusion, given the fact that Bryant was sentenced on March 28, 1995, to only six months in jail, Bryant's memorandum makes no attempt to satisfy the prejudice prong. Such a vague allegation is insufficient to carry Bryant's burden under *Strickland*. For these reasons, I find that Bryant's claim fails under both prongs of the *Strickland* analysis and, therefore, will dismiss Bryant's Claim Fourteen.

## I. Claim Fifteen

Bryant asserts that counsel provided ineffective assistance in failing to move, pretrial, to dismiss Count One, a 21 USC § 841(a)(1) conspiracy charge, because the indictment did not charge an offense or a specific time frame of the alleged conspiracy. Bryant further argues that dismissing Count One would necessarily have caused Counts Two, Three, Four, Five, Six,

Thirteen, Fourteen, Fifteen, Sixteen, and Seventeen to fail as a matter of law.  I find that Bryant has not demonstrated that counsel's performance was deficient or that he suffered any resulting prejudice.  Accordingly, I will dismiss these claims.

First, Count One did charge Bryant with an offense: conspiring to distribute or possess with intent to distribute marijuana, cocaine base, or powder cocaine, in violation of 21 U.S.C. § 846; and second, it charged that the conspiracy "beg[an] sometime in or about 1995, and continu[ed] through the return date of this Superseding Indictment."[8]  In *United States v. Queen*, 132 F.3d 991 (4th Cir. 1997), the court held that the trier of fact need not find that the starting date of a conspiracy coincide with the starting date alleged in the indictment, but rather, may find that the starting date of a conspiracy begins anytime in the time window alleged, so long as the time frame alleged places the defendant sufficiently on notice of the acts with which he is charged.  *Id*. at 999.  As I properly instructed the jury:

> The indictment charges that certain offenses were committed on or about a certain date.  The proof need not establish with certainty the exact date of the alleged offense.  It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

Accordingly, I find that counsel was reasonable in failing to move to dismiss Count One because he could reasonably have believed such a motion to be groundless and counsel is not ineffective in failing to make a motion for which there is no obvious basis.  *See Clanton*, 826 F.2d at 1359.

Further, Bryant has not shown a reasonably probability that I would have granted a motion to dismiss Count One and, therefore, he has not demonstrated that counsel's failure to file a pretrial motion to dismiss would have likely affected the outcome of his case.  For these

---

[8] This date range was not included in the jury verdict form for Count One, but it was included in the jury instructions on Count One.  In addition, each predicate offense for Count Two contained a date and each racketeering act for Count Three contained an "on or about" date.

reasons, I find that Bryant has not demonstrated ineffective assistance of counsel and, therefore, I will dismiss Bryant's Claim Fifteen.[9]

### J. Claim Sixteen

Bryant claims that counsel provided ineffective assistance in failing to object to an alleged "variance" between the offense for which he was charged in Count Twelve and the evidence presented at trial. I find that Bryant has not demonstrated that counsel's performance was deficient and, therefore, I will dismiss this claim.

A variance occurs when the evidence at trial or the court's instruction to the jury differ from what was charged in the indictment but do not broaden the bases for conviction. *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999). A variance is fatal only if it is in some way prejudicial to the defendant. *See* Fed. R. Crim. P. 52(b); *United States v. Brewer*, 1 F.3d 1430, 1437 (4th Cir. 1993); *United States v. Morrow*, 925 F.2d 779, 781 (4th Cir. 1991). Otherwise, the variance is merely harmless error. *See* Fed. R. Crim. P. 52(a); *Brewer*, 1 F.3d at 1437; *Morrow*, 925 F.2d at 781-82. In the instant case, no variance occurred.

Count Twelve of the Superseding Indictment specifically charged that on March 11, 2004, Bryant "did, as principal[] and as aider[] and abettor[], knowingly use, carry, brandish, and discharge, a firearm during and in relation to a drug trafficking crime, to-wit: . . . the offense alleged in Count One . . ." I note that the statute under which Bryant was charged, 18 U.S.C. § 924(c)(1), also punishes the use of a firearm "during and in relation to a crime of violence," but that this was not alleged.

I instructed the jury on Count Twelve as follows:

---

[9] Moreover, I note that Bryant was found not guilty on Counts Five and Six, the Superseding Indictment did not indict Bryant as to Count Four, and Counts Thirteen and Fourteen were dismissed upon motion of the Government.

Title 18, United States Code, Section 924(c) makes it a crime to knowingly use or carry a firearm during and in relation to a federal drug trafficking crime.

Count Twelve of the Indictment charges that on or about March 11, 2004, in the Western District of Virginia, Defendant Louis Antonio Bryant as principal or as an aider and abettor, did knowingly use, carry, brandish, and discharge a firearm during and in relation to the commission of the drug trafficking crime alleged in Count One of the Indictment, in violation of Title 18, United States Code, Sections 2 and 924(c)(1).

To sustain its burden of proof with respect to Count Twelve, the Government must prove the following two elements beyond a reasonable doubt: (1) The Defendant knowingly used or carried a firearm; and (2) The use or carrying was during and in relation to the drug trafficking crime charged in Count One.

If you find that these elements have been proved beyond a reasonable doubt, then you should find the Defendant guilty of Count Twelve.

If, on the other hand, you find that either of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty of Count Twelve.

Bryant mistakenly believes that Count Twelve was predicated on a "kidnapping" offense, which the government alleged also occurred on March 11, 2004, and which was offered as an act in furtherance of racketeering, as required in Count Three of the Superseding Indictment. Bryant seems to be arguing that because the jury found that the kidnapping was "not proven" that the jury must have based its verdict on narcotics distribution, and therefore, a variance occurred. The fact is, Count Twelve *was* based upon the drug conspiracy as alleged in Count One, the jury was so instructed, and no variance occurred. The mere fact that the jury found a crime of violence was not proven on March 11, 2004, does not have any bearing on an unrelated charge that happened to occur on the same date.

Because no variance occurred, I find that Bryant has not demonstrated that counsel's failure to make an objection for which there was no "obvious basis," *see Clanton*, 826 F.2d at 1359, was deficient performance under *Strickland*. Therefore, I will dismiss Bryant's Claim Sixteen.

### K. Claim Seventeen

Bryant asserts that his attorney provided ineffective assistance when he failed to object to the jury instructions regarding his vicarious liability for the sale of cocaine base by the co-conspirators. *See Pinkerton v. United States*, 328 U.S. 640 (1946). I find that Bryant has not demonstrated that counsel's performance was deficient or that he was prejudiced by counsel's allegedly deficient performance. Therefore, I will dismiss this claim.

Instruction No. 26 defined vicarious liability under *Pinkerton* as it pertains to Count Two as follows:

> In deciding whether the Defendant has committed three or more violations, if you have found that there was a conspiracy and that Defendant was a member, you may also consider narcotics law violations committed by his co-conspirators that are attributable to him as a member of the conspiracy—even if he did not commit the violation personally or was not even present at the time of the violation. This is true because a member of a conspiracy who commits another crime during the conspiracy's existence and in order to advance the goals of the conspiracy may be found by you to be acting as the agent of the other members of the conspiracy. Under such circumstances, a Defendant who is then a member of the conspiracy may be held responsible for the illegal actions of such other member of the conspiracy.

Instruction No. 27 pertaining to Count Two, permitted the jury to "count for purposes of [the second additional element of Count Two] the amounts of cocaine base sold by the Defendant and the amounts of cocaine base he could reasonably foresee would be sold by all of his co-conspirators during the course of the conspiracy charged in Count One." This instruction stated

the law under *Pinkerton* and required that Bryant reasonably foresee the amount of controlled substances the co-conspirators sold which implies that it is in furtherance of the conspiracy. Moreover, I properly instructed the jury on *Pinkerton* liability in the instructions pertaining to Count One (*see* Instructions Nos. 14, 14, 18, 19, and 20), and Instruction No. 27 is predicated on the jury finding Bryant guilty of Count One. Counsel was not ineffective in failing to object to the jury instructions where he reasonably believed they were in accordance with the law. *See Clanton*, 826 F.2d at 1359. Accordingly, I will dismiss Bryant's Claim Seventeen.

## L. Claim Twenty

Bryant claims that counsel provided ineffective assistance in failing to seek and obtain a "favorable" plea bargain after Bryant's mistrial. Bryant admits that he declined the proposed plea offer and requested a plea deal that did not require him to cooperate. Bryant asserts that his attorney informed him such a plea offer was rejected by the government, but he claims that counsel did not tell him that counsel tried to negotiate a favorable plea bargain or a different plea deal that did not require Bryant to cooperate with the government. I find that Bryant has failed to demonstrate that counsel's performance was deficient or that he was prejudiced by counsel's allegedly deficient performance. Therefore, I will dismiss this claim.

Bryant concedes that his counsel informed him of the proposed plea offer, which Bryant rejected. Counsel then attempted to obtain the plea deal that Bryant wanted (no cooperation and pleading guilty to only firearm and marijuana charges) the week before trial, which the government predictably rejected. Bryant claims that his attorney was ineffective, however, because he "never informed" Bryant that he had attempted to obtain a "fair and equitable" plea deal or "advise[d] Bryant[] there was/is [an]other option in which [Bryant] could have ple[]d, without having to cooperate."

In the first instance, criminal defendants have no constitutionally protected right to a plea bargain. *Field v. Maryland,* 956 F.2d 1290, 1297 n.19 (4th Cir. 1995). An attorney is not considered ineffective in plea negotiations where the defendant will not agree to a key term of any potential deal – that the defendant provide a measure of cooperation to the government. Thus, the alleged failure to obtain a "favorable deal" does not rise to the level of a constitutional deprivation. Furthermore, given that the government refused to accept a plea deal without Bryant's cooperation and that Bryant refused to accept a plea deal that required his cooperation, counsel's failure to negotiate a plea deal in this case cannot be considered outside the range of reasonable assistance. If counsel failed to inform Bryant of his attempts to obtain a "fair and equitable" (presumably meaning also non-cooperating) deal, it was likely because these attempts were futile; if he failed to inform Bryant of non-cooperating plea deal options, it was because there were no such options. Bryant's counsel informed Bryant of the government's plea deal, presented a counter proposal to the government (Bryant agreed to plead without providing any cooperation) which the government rejected, and informed Bryant of the government's requirement of cooperation. This was all that could reasonably be required of Bryant's attorney under the circumstances.

Given the evidence against Bryant and his refusal to cooperate with the government, Bryant simply cannot show that counsel's failure to negotiate a "favorable" plea deal prejudiced the outcome of his trial. The Supreme Court has held that the prejudice prong of *Strickland* in the context of the plea process "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Thus, under the prejudice prong, Bryant must show that but for his counsel's purported

ineffectiveness, Bryant would have likely received a lower sentence. The fact of the matter is that the government and defendant could not agree on a central element of any plea agreement.

While it is true that the lack of a plea deal allowed Bryant's second trial and subsequent conviction to move forward, counsel's inability to secure him a "favorable" plea deal is solely attributable to Bryant and can hardly be attributable to ineffective assistance of counsel. Bryant has not argued that he would have been willing to submit an "open" guilty plea to all of the charges against him. *See United States v. Booth*, 432 F.3d 542, 546-49 (3d Cir. 2005) (finding prejudice where counsel did not inform defendant of option to submit "open" guilty plea in court without a deal with the government where such a plea would have provided for a sentence adjustment under the guidelines due to acceptance of responsibility). Instead, Bryant argues to the court and made it clear to counsel at the time that he wanted a "fair and equitable" deal. Because he was not willing to cooperate and has not shown that he was willing to plead guilty and accept responsibility for all of the charges against him, even if such an option had been presented to him, Bryant has failed to meet the burden of the prejudice prong of *Strickland*. Therefore, I will dismiss Bryant's Claim Twenty.

## M. Claim Twenty-One

Bryant asserts that counsel provided ineffective assistance in failing to object when the jury was not instructed that they must acquit Bryant if they found multiple conspiracies existed. I find that Bryant has not demonstrated either prong of *Strickland* and, therefore, will dismiss this claim.

Counsel was not unreasonable in failing to object to jury Instruction No. 16.1 because there was no error in the instruction. Instruction No. 16.1 read in pertinent part:

> The Government must show that the single conspiracy alleged in
> Count One of the Indictment existed. *Proof of separate or*

> *independent conspiracies is not sufficient.*  Whether the evidence
> proves a single conspiracy or two or more 'multiple conspiracies'
> is a question of fact which you must decide.

Bryant's counsel was reasonable in believing that this instruction clearly required the jury to find Bryant guilty only if the government proved the single alleged conspiracy, as opposed to proving separate or independent conspiracies, existed.

Bryant has provided no basis for his assertion that the jurors must acquit Bryant if they found multiple conspiracies were established in the case.  Although Bryant cites *Walker v. United States* to support his assertion, there appears to be no such case in any circuit that supports such a proposition.  On the contrary, a jury verdict will only be reversed "if the proof of multiple conspiracies was likely to have confused the jury into imputing guilt to [a defendant] as a member of one conspiracy because of the illegal activity of members of the other conspiracy." *United States v. Roberts*, 262 F.3d 286, 294 (4th Cir. 2001); *see United States v. Hines*, 717 F.2d 1481, 1490 (4th Cir. 1983) (no reversible error where government proved two related conspiracies which were "not likely to confuse the jury").  As such, "a multiple conspiracy instruction is not required unless proof at trial demonstrates . . . separate conspiracies *unrelated* to the overall conspiracy charged in the indictment."  *United States v. Kennedy*, 32 F.3d 876, 884 (4th Cir. 1994) (emphasis in original).

In the instant case, Bryant has not argued that the proof at trial demonstrated separate conspiracies unrelated to the drug conspiracy he was charged with or that evidence of multiple conspiracies was likely to have confused the jury as to his guilt for the conspiracy he was charged with.  Thus, Bryant has not shown that his counsel acted unreasonably in failing to object to the jury instructions on Count One as they were given.  For these reasons, I will dismiss Bryant's Claim Twenty-One.

### N. Claim Twenty-Two

Bryant alleges that counsel's cumulative errors prejudiced his criminal proceeding. The United States Court of Appeals for the Fourth Circuit has rejected the argument that counsel's actions or omissions that do not individually constitute deficient representation under the *Strickland* standard can somehow be added together to create a constitutional violation. *Fisher v. Angelone*, 163 F.3d 835, 852-53 (4th Cir. 1998). As I have already determined that none of Bryant's individual allegations of ineffective assistance of counsel rose to the level of constitutional violation under *Strickland*, I further find that Bryant's cumulative error claim is without merit and, therefore, I will dismiss Bryant's Claim Twenty-Two.

### IV.

For the reasons stated, I will grant the United States' motion to dismiss Bryant's § 2255 motion.

**ENTER**: This 31st day of January, 2013.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE